United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 18, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 12-31267** |
| **ANLOC, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| | § | |
| **TEXAS OIL RESOURCES OPERATING,** | § | |
| **LLC,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3014** |
| | § | |
| **ACSI HOLDINGS, LLC,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

Texas Oil Resources Operating, LLC and ACSI Holdings, LLC confessed judgment and offered to pay provable attorneys' fees and expenses. Thomas Bray, Bruce Jamison, and Paul Hendershott accepted the offer and seek Court approval of $233,774.75 in attorneys' fees and $1,360.13 in expenses. For the reasons set forth below, the Court awards $181,314.49 in attorneys' fees and $1,360.13 in expenses.

## BACKGROUND

Anloc, LLC's first bankruptcy case commenced in February 2012. (Case No. 12-31267, ECF No. 1). In July 2012, Anloc sold interests in royalties from two oil and gas leases to Fuqua Family Limited Partnership, Thomas Bray, Jamison & Associates PLLC, and others in exchange for an unencumbered 40% working interest in those leases. (Case No. 12-31267, ECF Nos. 216; 234; 234-1 at 1). Paul Hendershott acquired an interest in the same leases prior to Anloc's bankruptcy. (ECF No. 5 at 2). This Court approved the sale, which bound the parties, their

respective agents, employees, legal representatives, successors, and assigns, in an order prohibiting any party in interest from asserting any claims brought by, through, or under Anloc or its property. (Case No. 12-31267, ECF Nos. 234 at 3; 235-1 at 15).

The order confirming Anloc's first amended plan split Anloc into two companies: Anloc and Hockley Partners, Ltd. (Case No. 12-31267, ECF No. 437 at 2). Anloc became an operating company and Hockley Partners owned the oil and gas leases. (Case No. 12-31267, ECF No. 437 at 2). The order confirming the plan also required James W. Alexander Living Trust and Alexander Energy (collectively, "Alexander"), a working interest owner, to prepare a modified note, deed of trust, and other security documents. (Case No. 12-31267, ECF No. 437 at 3–4). Alexander, Anloc, and Hockley Partners, LP executed a "Modification and Extension of Note and Deed of Trust, Assignment of Production and Security Agreement" in February 2013. (ECF No. 43-8). The exhibit to the modified deed of trust states that the property is subject to any burdens the Court approved in Anloc's bankruptcy case. (ECF No. 43-8 at 9–10).

In June 2017, Alexander assigned the modified deed of trust to ACSI Holdings, LLC. (ECF Nos. 8 at 18; 20 at 1; 83 at 2; 91-25). Texas Oil Resources Operating, LLC ("TORO") succeeded Anloc as operator of the two leases in July 2017.[1] (ECF Nos. 8 at 12; 105 at 7). Sometime between March and June 2019, ACSI contacted TORO and disputed the royalty interests of Bray, Jamison, Fuqua, and Hendershott. (ECF Nos. 20 at 3; 49 at 3; 76 at 7; 105 at 7–8). TORO then filed a frivolous interpleader lawsuit in the district court of Harris County alleging conflicting rights to the royalties in July 2019. (ECF No. 1-1 at 2). In the interpleader suit, TORO requested that

---

[1] TORO, ACSI, and Anloc are related. James Trippon, who was manager, CFO, and part owner of Anloc, is also the president and director of Texas Oil Resources Operating, LLC ("TORO"). (ECF Nos. 6 at 17; 7 at 17; 43 at 14; 83 at 2; 105 at 48). Trippon also signed the 2018 Public Information Report for ACSI. (ECF No. 43 at 7). Manfred Sternberg was both counsel to Anloc and is the director of ACSI. (ECF No. 43 at 23). Sternberg and Trippon have been friends for over 20 years. (ECF No 105 at 37).

Enterprise Crude Oil, LLC, the first purchaser of the oil produced from the leases, suspend royalty payments and interplead the disputed funds to the court registry. (ECF No. 1-1 at 7).

Fuqua removed the interpleader action to the federal district court in the Southern District of Texas. (ECF No. 1). The district court referred the matter to this Court on January 17, 2020. (ECF No. 37).

ACSI, TORO, Enterprise, and Fuqua entered a settlement agreement in August 2020. (ECF No. 71). On September 3, 2020, ACSI and TORO confessed judgment and agreed to pay Bray's, Jamison's, and Hendershott's provable attorneys' fees they incurred due to the frivolous interpleader action. (ECF No. 105 at 75–77). The Court ordered the parties to agree on the amount of attorneys' fees or it would hold a hearing to determine the appropriate amount. (ECF No. 105 at 77). The parties did not agree and the Court held hearings on December 7 and December 11, 2020.

Bray, Bruce Jamison's attorneys (Jamison, Michael Taylor, and Jerry Easley), and Hendershott's attorneys (Jared LeBlanc and Brandon O'Quinn) (collectively, the "BJH attorneys") request the following fees:

| Bray | $57,400.00 |
| Jamison | $78,937.50 |
| Taylor | $17,625.00 |
| Easley | $4,125.00 |
| LeBlanc[2] | $53,855.00 |

---

[2] LeBlanc testified that he worked 99.4 hours at rates of $500 and $550, totaling $52,855.00. (ECF No. 126 at 18). According to the Court's calculations, LeBlanc's fees at his requested rates totals $53,855.00. (ECF Nos. 118-3; 118-4). LeBlanc apparently misspoke in his testimony.

| O'Quinn[3] | $21,832.25 |
| **Total** | $233,774.75 |

## DISCUSSION

ACSI and TORO have confessed judgment and agree that they should pay the BJH attorneys' fees.  The Court must assess three issues: (i) the Court's the power to award attorneys' fees and expenses; (ii) any adjustments to the requested fees; and (iii) the parties liable for paying the fees.

### I.    THE COURT'S POWER TO AWARD ATTORNEYS' FEES AND EXPENSES

#### A.    Attorneys' Fees

When considering an award of attorneys' fees, the "bedrock principle" is the American Rule: each litigant pays his own attorney's fees unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010).  The Court should not deviate from the rule absent explicit statutory authority.  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health and Hum. Res.*, 532 U.S. 598, 602 (2001).

The BJH attorneys moved for an entry of judgment against TORO and ACSI on their confessions of judgment.  (ECF No. 110 at 2.)  They also moved for attorneys' fees and expenses under Rule 7054 of the Federal Rules of Bankruptcy Procedure "as sanctions for violating FRBC 9011 or as sanctions under 28 U.S.C. § 1927, and/or as may be allowed as sanctions under 11

---

[3] O'Quinn worked 64.05 hours (ECF No. 118-3) and 14.89 hours (ECF No. 118-4 at 4) for a total of 78.94 hours. LeBlanc testified that O'Quinn worked 79.39 hours. (ECF No. 126 at 18).  The Court notes the additional entries for O'Quinn at the end of ECF No. 118-3, but those entries are duplicated in ECF No. 118-4.  Additionally, the Court does not see O'Quinn listed anywhere in the beginning of ECF No. 118-3 along with LeBlanc.  It is unclear where the discrepancy of .45 of an hour arises, but ultimately the Court does not find the necessary support for O'Quinn's requested number.  (ECF No. 126 at 18).  O'Quinn's fees may not exceed the hours for which the Court has support. Therefore, O'Quinn's fees may not exceed 78.94 hours at a rate of $275, which totals $21,708.50.

U.S.C. § 105." (ECF No. 110 at 2). The Court has the power to issue sanctions for improper conduct under 11 U.S.C. § 105. *West v. Peterson (In re Noram Resources, Inc.)*, No. 08-38222, 2015 WL 5965654, at \*5 n.4 (Bankr. S.D. Tex. Oct. 9, 2015) ("Section 105(a) codifies a bankruptcy court's inherent authority to sanction in order to deter and provide compensation for a wide range of improper conduct"); *see Caroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017) (quoting *Placid Refin. Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997)) ("Federal courts also have authority to enjoin vexatious litigants . . . . Moreover, under 11 U.S.C. § 105, 'a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code.'"); *In re Tucker*, 224 F.3d 766, at \*3 (5th Cir. 2000) (rejecting the argument that the bankruptcy court erred in holding that § 105 authorized the imposition of sanctions where the sanctioned individuals participated in an abuse of process); *In re David*, 487 B.R. 843, 870 (Bankr. S.D. Tex. 2013); *see also In re Volpert*, 110 F.3d 494 (7th Cir. 1997) ("[T]he plain language of § 105 furnishes the bankruptcy courts with ample authority to sanction conduct that abuses the judicial process, including conduct that unreasonably and vexatiously multiplies bankruptcy proceedings."); *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir. 2000) ("Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel . . . .").

Bray, Jamison, and Hendershott should not bear the costs of ACSI and TORO's improper conduct. TORO and ACSI began the state court interpleader action in violation of this Court's orders. The Court has the power to sanction improper conduct, including violations of its orders, under § 105. TORO and ACSI's actions caused Bray, Jamison, and Hendershott to incur fees and

expenses.  Section 105 is the appropriate vehicle for the Court to provide compensation for conduct that violates this Court's orders, including TORO and ACSI's pursuit of a meritless interpleader action that seeks relief in contravention of the Court's order.  *See West*, 2015 WL 5965654, at *5 n.4.

Once the right to attorneys' fees comes into being, Rule 54 provides the procedures for enforcing it unless the right springs from the Federal Rules of Civil Procedure or 28 U.S.C. § 1927.  *Feldman*, 673 F.3d at 517; *MRO Commc'ns., Inc. v. AT&T Co.*, 197 F.3d 1276, 1280–81 (9th Cir. 1999).  Because the Court is not awarding fees and expenses as sanctions for violating the Federal Rules of Civil Procedure or 28 U.S.C. § 1927, Rule 54(d)(2)(A)–(C) applies.  FED. R. BANKR. P. 7054(b)(2)(A); FED. R. CIV. P. 54(d)(2)(E).

Bray, Jamison, and Hendershott met the Rule 54 procedural requirements.  First, they filed a motion for attorneys' fees.  FED. R. CIV. P. 54(d)(2)(A).  Second, judgment has not been entered, so the motion was not filed after the entry of judgment.  FED. R. CIV. P. 54(d)(2)(B)(i).  Third, the motion specifies the requested judgment, that § 105 entitles Bray, Jamison, and Hendershott to the award, and that the amount sought would be proven at an evidentiary hearing per the Court's oral order.  FED. R. CIV. P. 54(d)(2)(B)(ii)–(iii).  Finally, while neither TORO nor ACSI requested the opportunity for adversary submissions to a motion for attorneys' fees, they filed multiple pre- and post-trial briefs arguing for a lower fee award.  FED. R. CIV. P. 54(d)(2)(C).[4]

## B.    Expenses

The decision to award expenses under Bankruptcy Rule 7054(b) is within the Court's discretion.  *In re Clansy*, No. 04-40504, 2008 WL 177779, at *3 (Bankr. S.D. Tex. Jan. 18, 2008).

---

[4] TORO contends that it did not agree to sanctions and that BJH waived their claims for sanctions.  (ECF No. 130 at 4).  At the same time, TORO contends that it has offered judgment and has agreed to pay BJH's fees.  (ECF No. 130 at 1, 4).  Because the sole sanction is an award of attorneys' fees, the issue is moot.

The Court may consider factors such as bad faith by the prevailing party in incurring unnecessary expenses and the inability of the debtor to afford the expenses of the prevailing party. *See Young v. Aviva Gelato, Inc. (In re Aviva Gelato, Inc.)*, 94 B.R. 622, 624 (B.A.P. 9th Cir. 1988) (affirming the bankruptcy court's refusal to award expenses based on the prevailing party's "multiplication of the proceedings and meritless motions."). *See also Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 963 (3d Cir. 1992) (determining that the bankruptcy court may deny expenses "if it would be futile to award them.").

The BJH attorneys have not incurred any unnecessary expenses. The Court has no knowledge that ACSI or TORO are unable to pay the expenses. Neither ACSI nor TORO argued that they should not be liable for the BJH attorneys' expenses. The Court may award expenses.

## II.   ADJUSTMENTS IN THE REQUESTED FEES

### A.   The Lodestar Method and the *Johnson* Factors

The Court may calculate reasonable attorneys' fees with the lodestar method, in which the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hobbs v. EVO Inc.*, 7 F.4th 241, 259 (5th Cir. 2021); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). The lodestar amount is presumed reasonable, but the Court may apply an upward or downward multiplier from the lodestar amount by applying the *Johnson* factors. *Hobbes*, 7 F.4th at 259; *Union*, 669 F.3d at 643, n.26; *TransAmerican Nat. Gas Corp. v. Zapata P'ship (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994); *Garza v. CMM Enterprises, LLC (In re Garza)*, No. 16-70444, 2020 WL 718444, at *2 (Bankr. S.D. Tex. Feb. 12, 2020).

### 1.   *Lodestar Method*

The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hourly rates and hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The BJH attorneys are the fee applicants and they agreed to prove up their fees. Therefore, they must demonstrate that their hours were billed at reasonable rates and were reasonably expended. *See Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H–05–3167, 2015 WL 6739022, at *7 (S.D. Tex. Nov. 4, 2015) ("The first lodestar step is to determine the reasonable hourly rate for the attorneys . . . , based on 'the prevailing market rates in the relevant community.' . . . The second step is to determine the number of hours 'reasonably expended.'").

      a.    <u>Appropriate Hourly Rates</u>

The Court first examines the BJH attorneys' requested rates. To prove up their fees, the BJH attorneys must initially prove that their requested rates are commensurate with market rates in the community. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The Court may rely on its knowledge of customary billing practices in the relevant community to determine a reasonable rate. *In re HL Builders, LLC*, 630 B.R. 32, 44 (Bankr. S.D. Tex. 2020); *Garza*, 2020 WL 718444, at *2. *See Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x. 146 (5th Cir. 2015). Here, the relevant community is Houston, Texas. The BJH attorneys offered the following evidence:

      i.    Bray

Bray has been licensed in Texas since 1988. He maintains a solo law practice and is the general counsel and CFO of an oil and gas specialty chemical company. Bray's hourly rate is $350. He has experience with post-judgment motions to enforce the judgment of a federal court, which was relevant in responding to the motion to remand. Bray testified that his requested rate is substantially lower than the prevailing hourly rate in Houston for similar services by lawyers of

reasonably comparable skill, experience, and reputation.  Further, Bray charges $350 per hour for another client he represents in Texas state court.  The Court finds that Bray's rate is commensurate with the reasonable rates charged in the Houston market for similar attorneys.

ii.   Jamison

Jamison has been licensed in Texas since 1976.  He is the head of Jamison & Associates, PLLC.  Taylor and Easley work for him as contract attorneys.  Jamison's hourly rate is $750.  He testified that his rate is commensurate with attorneys in the Houston market with similar longevity, background, and experience.  He also testified that he charged other clients $750 an hour as of December 2020.  The Court finds that Jamison's rate is commensurate with the reasonable rates charged in the Houston market for similar attorneys.

iii.   Taylor

Taylor has been licensed in Texas since 1994.  He works as a contract attorney for Jamison. His hourly rate is $500.  Jamison testified that Taylor is highly experienced in complex litigation. Taylor never testified, but Jamison testified that Taylor's hourly rate was fair, usual, reasonable, and customary for the services Taylor provided in the case.  The Court finds that Taylor's rate is commensurate with the reasonable rates charged in the Houston market for similar attorneys.

iv.   Easley

Easley has been licensed in Texas since 2006.  He works as a contract attorney for Jamison. His hourly rate is $500.  Jamison testified that Easley is a litigation lawyer with extensive appearances in federal court.  Easley never testified, but Jamison testified that Easley's hourly rate was fair, usual, reasonable, and customary for the services Easley provided in the case.  The Court finds that Easley's rate is commensurate with the reasonable rates charged in the Houston market for similar attorneys.

v.      LeBlanc

LeBlanc has been licensed in Texas since 2004.  He is the head of the Houston office of the law firm Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan.  LeBlanc works mostly in energy and oil and gas matters, and he has represented creditors in bankruptcy, intellectual property, and trade secrets cases.  LeBlanc's hourly rate in this case was $500 prior to 2020.  In 2021, it rose to $550.  LeBlanc testified that the rates of similarly situated Houston attorneys range from $425 to $700.  The Court finds that LeBlanc's rate is commensurate with the reasonable rates charged in the Houston market for similarly situated attorneys.

vi.      O'Quinn

O'Quinn has been licensed in Texas since 2013.  He is an associate with Gordon Arata and his hourly rate is $275.  LeBlanc did not testify about the market rate for an attorney with similar experience.  Nonetheless, the Court finds that O'Quinn's rate is commensurate with the reasonable rates charged in the Houston market for similarly situated attorneys.[5]

b.      <u>Hours Reasonably Spent</u>

The BJH attorneys' fees must reasonably relate to the work and time listed in their fee statements.  *See Bode v. U.S.*, 919 F.2d 1044 (5th Cir. 1990) ("[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours."); *Garza*, 2020 WL 718444, at *3 ("[T]he Court's duty is to examine the application for noncompensable hours.").  The party seeking payment of attorney's fees has the burden to show that the hours

---

[5] TORO's post-hearing brief requests that the Court apply the *Johnson* factors to determine the reasonable hourly rates of the BJH attorneys.  (ECF No. 130 at 5–12).  The determination of reasonably hourly rates is part of the lodestar calculation.  After the lodestar is calculated, the *Johnson* factors are used to consider application of an upward or downward adjustment.  *Hobbs*, 4 F.4th at 259.  The *Johnson* factors come into play after the Court has determined a reasonable hourly rate, not during its determination of a reasonable hourly rate.

requested are reasonable.  *Rodriguez v. Countrywide Home Loans, Inc., (In re Rodriguez)*, 517 B.R. 724, 734 (Bankr. S.D. Tex. 2014).

The Court considers whether any fees are block-billed, vague, or excessive.  The Court also considers whether the BJH attorneys exercised billing judgment or recorded their hours contemporaneously.

  i. Block-Billing

TORO and ACSI[6] request a reduction in fees for block-billing.  (ECF No. 130 at 18).  An award of attorneys' fees may be reduced if the attorneys' documentation of hours is inadequate. *Hensley*, 461 U.S. at 433.  Block-billed time entries describe multiple activities in one time entry or record time by the day instead of the specific task.  *C & D Prod. Servs. v. Dir., Office of Worker's Comp. Programs*, 376 F. App'x 392, 394 (5th Cir. 2010); *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09–CV–0752–D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) ("The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.") (internal quotations omitted).  Block-billed entries may not offer sufficient evidence of the reasonableness and necessity of the time expended.  *Gurule v. Land Guardian, Inc.*, No. 15-03487, 2017 WL 6761821, at *4 (Bankr. S.D. Tex. Oct. 24, 2021); *In re Owsley*, No. 19-20060, 2021 WL 1270833, at *13 (Bankr. S.D. Tex. Apr. 5, 2021); *Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 576 B.R. 84, 102 (Bankr. S.D. Tex. 2017); *In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989).  However, a reduction for block-billing is not automatic.  *Humphrey v. United Way of Tex. Gulf Coast*, 802 F.Supp.2d 847, 864 (S.D. Tex. 2011). "[B]efore reducing the fee request based on block billing, the court must evaluate whether the

---

[6] ACSI adopts the positions in TORO's post-hearing brief at ECF No. 130.  (ECF No. 127 at 1).

applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended." *Fralick,* 2011 WL 487754, at *5.

The reduction for a fee request that is supported by vague or block-billed time entries should be commensurate with the egregiousness of the inadequacy in documentation. *See, e.g., Symetra*, 2015 WL 6739022, at *7 (noting that both a 10% reduction and a 40% reduction in block-billed time entries were appropriate reductions based on the egregiousness of the block-billing in each instance); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, CV H-14-1368, 2020 WL 821879, at *11 (S.D. Tex. Feb. 19, 2020) (finding the billing entries were block-billed, but the detail in the narratives associated with the time blocks did not prevent the court from determining that the attorneys spent a reasonable amount of time on certain work); *Gurule v. Land Guardian, Inc.*, No. 4:15-cv-03487, 2017 WL 6761821, at *4 (S. D. Tex. Oct. 24, 2017) ("When attorneys' time records are block billed, a common remedy is for district courts to reduce the lodestar by 10 to 30 percent."); *Fralick*, 2011 WL 487754, at *6 (reducing fees by 10% for block-billing).

The BJH attorneys' fee statements contain block-billed entries. Almost all of their fee statements are entered by the day instead of by the specific task.[7] Many of the fee statements describe multiple activities for that single day. At various points, Bray and Jamison report their fees in ranges of multiple days. This is block-billing. *See Fralick*, 2011 WL 487754, at *4; *C & D Prod. Servs.*, 376 F. App'x at 394.

---

[7] A few of the fee statements contain multiple entries for the same day. For example, LeBlanc on 9/1/2020, 9/2/2020, and 9/3/2020, O'Quinn on 9/11/2020, and Jamison on 1/28/2020 all have multiple entries. However, these entries are the minority, and several of these entries contain block billing anyway. Bray has many entries on the same day, but that is largely because his records were submitted in blocks of overlapping groups of days or even *weeks* instead of itemizing per each specific task.

The BJH's attorneys' block-billing has impeded the Court's ability to determine the reasonableness of their fees. On some days, the BJH attorneys' reports contain no more than one entry per day. For example, LeBlanc billed 1.20 hours for "[c]all with counsel regarding discovery" and nothing else on June 18, 2020. (ECF No. 118-3 at 23). That task has a one-to-one correspondence with the number of hours reported for that day. Conversely, many entries contain several activities for a single day. For example, Bray billed 5.00 hours for "[r]eview ACSI's Motion to Remand; review Fuqua Family LP's Response; research; draft and revise Response to ACSI's Motion to Remand; communications with common interest defendants; file" on November 18, 2019. (ECF No. 118-5 at 3). This entry lumps together tasks in such a way that it is impossible to tell whether the number of hours spent and claimed was reasonable for any particular task. The Court cannot determine from this entry how much time was spent reviewing, researching, drafting, revising, communicating, or filing. It is conceivable, though unlikely, that Bray spent 4.00 hours filing the response and only a modest amount of time on drafting and research. The Court cannot

determine how the time was actually spent on each activity because of the block-billing. Jamison's,[8] Bray's,[9] LeBlanc's,[10] and O'Quinn's[11] block-billed entries are reduced by 20%.[12]

      ii.       Vague Entries

---

[8] Jamison submitted an entry for 0.75 hours and 4 activities on November 6, 2019, another for 3.25 hours and 3 activities on November 18, 2019, another for 3.75 hours and 4 activities on August 26, 2020, another for 3.50 hours and 4 activities on August 27, 2020, another for 1.25 hours and 4 activities on September 14, 2020.

[9] Bray submitted an entry for 11.00 hours and 6 activities from September 25, 2019 to October 4, 2019, another for 5.00 hours and 7 activities on November 18, 2019, another for 24.00 hours and 4 activities from February 18, 2020 to March 13, 2020, another for 2.00 hours and 4 activities on June 18, 2020, another with 12.00 hours and 6 activities from July 9, 2020 to July 20, 2020, another for 3 hours and 7 activities from July 21, 2020 to July 27, 2020, another for 6.00 hours and 5 activities from August 11, 2020 to August 12, 2020, another for 5.00 hours and 4 activities from August 10, 2020 to August 13, 2020, another for 4.00 hours and 8 activities from August 20, 2020 to August 24, 2020, another for 15.00 hours and 6 activities from August 23, 2020 to August 27, 2020, another for 2.25 hours and 4 activities from October 6, 2020 to October 8, 2020, another for 1.25 hours and 4 activities from October 18, 2020 to October 23, 2020, another for 1.50 hours and 4 activities from November 11, 2020 to November 12, 2020, and another for 1.25 hours and 4 activities on November 13, 2020.

[10] LeBlanc submitted an entry for 5.10 hours and 6 activities on August 11, 2020, another for 3.60 hours and 4 activities on August 14, 2020, another for 3.50 hours and 3 activities on August 19, 2020, and another for 1.40 hours and 3 activities on September 10, 2020.

[11] O'Quinn submitted an entry for 2.90 hours and 5 activities on August 6, 2020, another for 3.20 hours and 3 activities on August 7, 2020, another for 3.00 hours and 3 activities on August 9, 2020, another for 5.10 hours and 3 activities on August 10, 2020, another for 4.60 hours and 4 activities on August 11, 2020, another for 5.70 hours and 6 activities on August 14, 2020, another for 1.30 hours and 3 activities on August 16, 2020, another for 6.90 hours and 5 activities on August 17, 2020, another for 3.20 hours and 6 activities on August 18, 2020, another for 4.90 hours and 7 activities on August 19, 2020, another for 6.20 hours and 6 activities on August 20, 2020, another for 1.90 hours and 6 activities on August 21, 2020, another for 6.00 hours and 6 activities on August 28, 2020, another for 0.70 hours and 6 activities on August 31, 2020, another for 2.90 hours and 4 activities on September 1, 2020, another for 1.30 hours and 5 activities on September 14, 2020.

[12] The Court recognizes that the BJH attorneys may not have known that they would need to prove up their fees at the time they recorded their fees. Still, the fees are excessively block-billed and the BJH attorneys have the burden to prove them. The Court has taken the potential lack of knowledge into consideration in its deduction for block-billing.

TORO and ACSI seek a reduction in fees because certain entries are vague.  (ECF No 130 at 18).  Vague entries are those that cannot be "meaningful[ly] review[ed]." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).  A vague entry imprecisely explains what was done, thereby preventing the Court from determining whether the time was reasonably expended.  *See Fralick*, 2011 WL 487754, at *7 (finding entries such as "telephone conference," "researching cases," and "research" are vague).  A court should disallow vague entries only if they were so vague or unilluminating that the court could not meaningfully review whether the particular hours were reasonably expended.  *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe. Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997).  Courts have adjusted vague entries by various amounts.  *See, e.g.*, *id.* (disallowing an entry for "research and review of cases" for vagueness); *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 773 (5th Cir. 1996) (disallowing paralegal fees with "terse listings" of "library research," "analyzing documents," "reading background documents," and "phone interviews"); *Fralick*, 2011 WL 487754, at *7 (reducing vague entries by 10%), *Cookston v. Freeman, Inc.*, No. 3:98–CV–2106–D, 1999 WL 714760, at *3 (N.D. Tex. Sept. 14, 1999) (disallowing or only allowing in part entries with descriptors such as "[r]evisions," "[p]repare for filing," and "[t]elephone call from Wirz"); *In re Cole*, No. 18-35182, 2020 WL 4577236, at *13 (Bankr. S.D. Tex.  July 20, 2020) (reducing vague entries by 25%); *In re 900 Corp.*, 327 B.R. 585, 595 (Bankr. N.D. Tex. 2005) (disallowing 40% of vague entries such as "review motions and orders; telephone conferences about bankruptcy related issues; comment on various papers.").

The BJH attorneys' records contain vague entries. The Court cannot meaningfully review them. LeBlanc's,[13] O'Quinn's,[14] Bray's,[15] and Jamison's[16] vague entries are reduced by 10%.

iii.       Excessive or Duplicative Time and Billing Judgment

TORO and ACSI seek deductions for excessive and duplicative billing. (ECF No. 130 at 13). If the total number of hours billed is too high, the Court may reduce the total number of hours awarded. *Geophysical Serv., Inc.*, 2020 WL 821879, at *12 (reducing associates hours by 10%); *In re Teraforce Tech. Corp.*, 347 B.R. 838, 865 (Bankr. N.D. Tex. 2006) (noting the excessiveness of certain billing entries and reducing fees by roughly 25% overall); *In re Cole*, No. 18-35182, 2020 WL 4577236, at *13 (Bankr. S.D. Tex. July 20, 2020) (reducing excessive time entries by 25%). Notably, the Fifth Circuit upheld a bankruptcy determination reducing fees where "attorneys duplicated each other's efforts in preparing the case." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

---

[13] LeBlanc entered "Call with co-defendants; status of documents from Trustee; follow-up; reviewing draft amendments" on August 17, 2020 for 0.60 hours; "Reviewing trustee documents; emails with co-defendants; conference all with counsel" on August 19, 2020 for 3.50 hours; "Phone call with Burks and co-defendants; follow-up email to Burkes [*sic*] regarding miscellaneous; working on time/fee submissions" on September 10, 2020 for 1.40 hours.

[14] O'Quinn entered "Conference call with J. LeBlanc, T. Bray, and B. Jamison" on October 6, 2020 for 0.40 hours.

[15] Bray entered "Investigation; assemble documents; communication with common interest defendant" on September 17, 2019 for 0.25 hours; "Investigation; assemble documents; review court filings; communication with common interest defendant" on September 25, 2019 for 0.25 hours; "Communications with common interest defendants; receive service of citation via certified mail; review transcripts of Trippon and Sternberg; review court documents" on September 26, 2019 for 2.00 hours; "Review pleadings; investigation; research; draft notice of removal; communications with common interest defendants; review Fuqua Notice of Removal" on September 27, 2019 for 1.75 hours; "Start drafting motion to enforce Court's July 25, 2012 order; research; communications with common interest defendants" from September 30, 2019 to October 1, 2019 for 4.00 hours; "Review TORO's Interpleader to Tender Funds to the Registry of the Court; investigation; research; communications with common interest defendants; draft and file Thomas R. Bray's Original Answer, Counterclaim and Crossclaim" from September 25, 2019 to October 4, 2019 for 11 hours.

[16] Jamison entered "Discussion with TRB" on September 7, 2019 for 0.50 hours; "Discussion with TRB" on September 26, 2019 for 0.25 hours; "Discussion with other interpleader defendants" on October 17, 2019 for 0.50 hours; "Discussion with other interpleader defendants" on June 11, 2020 for 0.50 hours; "Email communication with other interpleader defendants" on September 16, 2020 for 0.50 hours; "Email communication with other interpleader defendants; conference call with other interpleader defendants to discuss same" on October 5, 2020 for 0.75 hours.

The BJH attorneys' records reflect that they collectively spent 491.09 hours on this matter between July 2019 and November 2020.  TORO and ACSI argue that Jamison's, Bray's, and Fuqua's "Answer to Complaint, Crossclaim and Counterclaim" filed on October 4, 2019 are facially identical.  (ECF No. 130 at 2, 13).  They also argue that Bray and Jamison filed identical amended answers to the First Amended complaint on June 18, 2020 and the BJH attorneys filed several joint responses, replies, briefs, and motions.  (ECF No. 130 at 3–4).  TORO and ACSI offer the following evidence of duplication:

> Bray's records indicate that between the period of September 25, 2019 and October 4, 2019 he spent eleven (11) hours on "Review TORO's Interpleader to Tender Funds to the Registry of the Court; investigation; research; communications with common interest defendants; draft and file Thomas R. Bray's Original Answer, Counterclaim and Crossclaim." Jamison spent fifteen and one half (15.5) hours on "Review of court documents and discussion with TRB, Discussion with TRB, Review Notice of Removal and other court filings; discussions with TRB, Preparation of original answer and counterclaims and cross claims; email correspondence with other counsel, Prepare draft of Rule 12(b)(6) Motion to Dismiss against Enterprise; legal research on application of Rule 12(b) to interpleader claims, Review and file Original Answer, Counterclaims and Crossclaims, Review, revise, and file Rule 12(b)(6) Motion to Dismiss against Enterprise," during that same time period.

(ECF No. 130 at 13).  The "Original Answer, Affirmative Defenses, Counterclaims and Crossclaims" filed by Bray and Jamison on October 4, 2019 are nearly identical.  (Case No. 19-03697, ECF Nos. 6; 7).  They contain the same admissions, denials, and exhibits.  They assert the same affirmative defenses, counterclaim, and crossclaim.  They even have the same typos.  Bray and Jamison did not both draft their answers from scratch.  Instead, one of them drafted the answer and the other adopted it.  Implications to the contrary in their billing statements evidences duplicative billing.

TORO and ACSI also argue that Bray and Jamison filed individual, but very similar, amended answers to the first amended complaint on June 18, 2020.  (ECF Nos. 130 at 3; 53; 54).

17 / 26

Indeed, the amended answers and affirmative defenses are very similar. Bray's records indicate that he spent 2.00 hours on "Review TORO's First Amended Petition in Interpleader to Tender Funds to the Registry of the Court; draft and file Answers and Affirmative Defenses to TORO's First Amended Petition; communications with common interest defendants" on June 18, 2020. Jamison's records indicate that he spent 1.25 hours on "Prepare draft of amended answer; discussion with other counsel relating to discovery" on June 18, 2020 and 0.75 hours on "Prepare and file amended answer to amended interpleader" on June 20, 2020.[17] These entries are further evidence of duplicate filings of Jamison and Bray.

No time will be awarded for duplicate work. The Court cannot easily determine how much of Bray's time was spent drafting the original answer, counterclaim, and crossclaim because the relevant entry is block-billed. Bray's entry from September 25, 2019 to October 4, 2019 is reduced by 50%. Jamison's entry on October 3, 2019 ("Preparation of original answer and counterclaims and cross claims; email correspondence with other counsel") is entirely disallowed. Bray's and Jamison's entries for the amended answers are also entirely disallowed.

Aside from those two instances, ACSI and TORO have identified no other duplicative or excessive billing by the BJH attorneys. The Court has identified no other instances of duplicative or excessive billing. Bray, Jamison, and Hendershott jointly filed several other pleadings. (ECF Nos. 75; 76; 77; 90; 109; 110; 117; 129). At least one jointly filed response was split between them appropriately.[18] Jointly filing does not necessarily mean work was duplicated where individually filing the same document and doubly charging for the work does.

---

[17] The amended answers were filed on June 18, so Jamison's entry for June 20, 2020 was recorded on the wrong date.

[18] *See, e.g.*, ECF No. 75. Bray, Jamison, and Hendershott filed a joint response to the motion to deposit funds into the registry on August 12, 2020. LeBlanc and O'Quinn's billing statements indicate they spent less than 0.50 and 2.20 hours respectively on the response. (ECF No. 118-3 at 30). Bray spent a collective 6.25 hours on the response. (ECF No. 118-5 at 5–6). Jamison, Taylor, and Easley's billing statements indicate that Jamison spent a collective 1.25 hours

The fact that the Court has not found other instances of duplicative billing does not mean that the BJH attorneys did not engage in any other redundant or unnecessary work. In presenting a request for fees, a party should demonstrate billing judgment. *Cole*, 2020 WL 4577236, at \*10. Therefore, to avoid further reductions in their fee award for excessive or duplicative billing, the BJH attorneys must demonstrate that they exercised billing judgment.

Billing judgment should be evident from the attorneys' invoices offered in support of the requested fees and "charges for duplicative, excessive, or inadequately documented work should be excluded." *Id.* (citing *In re Mud King Prod.*, 525 B.R. 43, 56 (Bankr. S.D. Tex. 2015)). Failure to exercise billing judgment can lead to fee reduction. *See Walker*, 99 F.3d 761, 770 (5th Cir. 1996) (reducing fees by 15% for failing to exercise billing judgment when the only evidence was a sworn statement that conferences with other attorneys were not billed); *Gurule*, 2017 WL 6761821, at \*4–5 (holding that a 20% reduction was appropriate when "courts frequently reduce the lodestar by 10 to 50 percent" for the failure to exercise billing judgment); *Cookston*, 1999 WL 714760, at \*5 (reducing fees by 15% because there was no evidence in the billing records that any time was written off and counsels' affidavits about a lack of duplication did not rise to an acceptable level of billing judgment); *see also Freiler v. Tangipahoa Parish Bd. Of. Educ.*, 185 F.3d 337, 348 (5th Cir. Aug. 13, 1999) (affirming district court's reduction of hours by 10% to reflect "possible redundancy and work which in hindsight may have been unnecessary") (internal quotations omitted)).

TORO and ACSI broadly allege that the BJH attorneys did not exercise billing judgment. (ECF No. 130 at 14–16). Bray and Jamison testified that they exercised billing judgment. (ECF

---

on the response. (ECF No. 118-7 at 5–6). Collectively, LeBlanc, O'Quinn, Bray, and Jamison spent 10.20 hours on an 8-page response, 3 exhibits, and a declaration. This pooling of resources was not duplicate or excessive.

No. 126 at 17–18, 65, 72). The Court has identified one instance of billing judgment in LeBlanc's billing records. On October 6, 2020, O'Quinn billed 0.40 hours for a call with LeBlanc, Bray, and Jamison. (ECF No. 118-4 at 3). LeBlanc did not bill any time for a call on October 6, 2020. (ECF No. 118-4 at 3).[19] Therefore, it appears that LeBlanc was on a call with Bray, Jamison, and O'Quinn for 0.40 hours, yet he did not bill for it. This counts as some billing judgment. *See Cole*, 2020 WL 4577236, at *13 (noting the difference between some billing judgment and complete billing judgment). The Court sees no evidence of billing judgment in any of the other BJH attorneys' records. On the contrary, Bray's, Jamison's, O'Quinn's, and LeBlanc's records are replete with block-billed and vague entries. This evidences a lack of billing judgment. As movants who jointly filed several motions, the BJH attorneys have the burden to demonstrate they exercised billing judgment. They have not done so. Therefore, the BJH attorneys' fees will be reduced by 15% overall to account for failing to demonstrate billing judgment in their records and the "possible redundancy and work which in hindsight may have been unnecessary." *Freiler*, 185 F.3d at 348.

    iv.    Contemporaneous Billing

    TORO and ACSI allege that the BJH attorneys recreated their fees after the offer of judgment to recover more than they are entitled:

> Hendershott filed with the Court, Exhibit 55, [Docket Entry No. 91-55] as a pretrial Exhibit. Exhibit 55 was filed in late evening September 2, 2020. This Exhibit reflected records showing $20,790.00 as time entries. Then on December 6, 2020, Hendershott filed Exhibit 3 [docket entry 118-3] reflecting attorneys' fees of $38,418.95. It is not apparent, nor did Mr. Leblanc testify as to the reason why the records were so disparate, however, it is apparent that they were changed after the offer of judgment.

---

[19] Neither did Jamison, yet he has a conference call listed on October 5, 2020. (ECF No. 118-8 at 2). Because no other attorney has an entry for a call on October 5, 2020, it appears that Jamison's entry, like his June 20, 2020 entry, is for the wrong date.

(ECF No. 130 at 16).  Exhibit 55, which appears on the docket September 1, 2020, includes Hendershott's attorneys' fees though the end of July 2020.  Exhibit 3, which was filed December 6, 2020, includes Hendershott's attorneys' fees through the end of August 2020.  The difference between the two exhibits is not due to the recreation of billing entries.  In fact, the Court finds that the submission of block-billed and vague entries indicates that the records were made contemporaneously.

     c.    <u>Lodestar Conclusion</u>

The Court reduced block-billed entries by 20%, vague entries by 10%, and duplicative entries entirely.  The Court also reduced the BJH attorneys' entries by 15% overall for failing to demonstrate billing judgment.  After the reductions, the BJH attorneys' fees are:

| Attorney | Requested | Allowed |
|---|---|---|
| Bray | $57,400.00 | $41,080.29 |
| Jamison | $78,937.50 | $61,805.63 |
| Taylor | $17,625.00 | $14,981.25 |
| Easley | $4,125.00 | $3,506.25 |
| LeBlanc | $53,855.00 | $44,293.84 |
| O'Quinn | $21,832.25 | $15,647.23 |
| **Total** | $233,774.75 | $181,314.49 |

     2.    *Johnson Factors*

After completing the lodestar analysis, the Court examines whether the *Johnson* factors warrant an upward or downward multiplier.  The lodestar analysis already reflects considerations raised by many of the *Johnson* factors, so a court must be careful not to double-count

a *Johnson* factor already reflected in the lodestar calculation. *Shipes v. Trinity Industries,* 987 F.2d 311, 320 (5th Cir. 1993); *Fralick*, 2011 WL 487754, at *14.

The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  The lodestar method is presumed to fully account for the second, third, eighth, and ninth *Johnson* factors.  *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 659 (5th Cir. 2012); *Garza*, 2020 WL 718444, at *2.

Regarding the first *Johnson* factor (the time and labor required), "[t]he trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717.  The Court finds that the hours spent were reasonable, which is adequately represented in the lodestar analysis.

Regarding the fourth *Johnson* factor (the preclusion of other employment by the attorney due to acceptance of the case), Bray testified that he would have spent his time performing legal work for the chemical company of which he is the CFO or taking on other work.  Aside from this statement, the Court has no evidence that would merit a departure from the lodestar method.

Regarding the fifth *Johnson* factor (the customary fee), the Court has found that the rates the BJH attorneys charged are customary for attorneys in the Houston market with similar experience.

Regarding the sixth *Johnson* factor (whether the fee is fixed or contingent), the BJH attorneys charged their fees on an hourly basis.  The sixth factor is not a reason to depart from the lodestar method.

Regarding the seventh *Johnson* factor (time limitations), the Court has no evidence that this case delayed any of the BJH attorneys' other legal work.

Regarding the tenth *Johnson* factor (the undesirability of the case), this case, which, at most, should have required a simple interpretation of this Court's order, was both frivolous and highly contentious.  The frivolity and contentiousness made aspects of this case undesirable. *Johnson* indicated that undesirability would be relevant in civil rights cases when working as a civil rights attorney would not be pleasantly received in the attorney's community.  *Johnson*, 488 F.2d at 719.  Other courts have withheld adjusting for this factor outside of the civil rights context. *See HL Builders*, 630 B.R. at 58 (finding no reason to depart from the lodestar method for a case "not out of the ordinary for defending an involuntary petition"); *In re Raygoza*, 556 B.R. 813, 825 (Bankr. S.D. Tex. 2016) (finding no evidence of undesirability in preparing or filing a proof of claim); *In re Holloway*, 247 B.R. 197, 203 n.11 (Bankr. E.D. Tex. 2000) ("[W]hile this case was contentious, it was not complex. There is no evidence before this Court that it was undesirable as it pertains to a *Johnson* analysis.").  This bankruptcy case will have no bearing on the BJH attorneys' standing in the community.  *See In re El Paso Refinery, L.P.*, 257 B.R. 809, 826 n.30 (Bankr. W.D. Tex. 2000) ("Bankruptcy cases are not inherently 'undesirable' in the way that handling a civil rights case might be thought to be.").  Therefore, an upward adjustment for this factor is not appropriate.

Regarding the eleventh *Johnson* factor (the nature and length of the professional relationship with the client), the Court does not find this factor relevant.  Bray represents his own

interests in the royalties. Jamison represents his law firm's interest.  Hendershott has known LeBlanc for a long time, but the Court has no evidence that LeBlanc or O'Quinn lowered their rates while working for Hendershott in other cases. The eleventh factor is not a reason to depart from the lodestar method.

Regarding the twelfth *Johnson* factor (awards in similar cases), "[t]he reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719.  The lodestar fee award here is higher than other similar cases.  *See, e.g., Guan v. Ellingsworth Residential Cmty. Ass'n., Inc. (In re Ellingsworth Residential Cmty. Ass'n., Inc.)*, No. 6:20-bk-01246-KSJ, 2021 WL 4100964, at *3 (Bankr. M.D. Fla. Sept. 8, 2021) (awarding $11,022.65 for defending a frivolous adversary proceeding under § 105); *In re Coastal Land Dev. Corp.*, No. 07-51267-NPO, 2009 WL 1515050, at *12 (Bankr. S.D. Miss. May 29, 2009) (awarding $13,420.00 for defending a frivolous objection under Federal Rule of Bankruptcy Procedure 9011 and § 105).  However, those cases involved one attorney and required considerably less time.  The facts of this case warrant the amount of fees awarded under the lodestar method.

In sum, the *Johnson* factors do not mandate the application of an adjustment to the lodestar method.

3.    *Expenses*

The BJH attorneys seek to recover $1,360.13 in expenses.  This amount consists of filings fees, postage expenses, trial supplies, transcripts, service of subpoenas, and PACER fees.  TORO and ACSI did not challenge the requested expenses in their post-hearing briefs and no testimony presented at the December 7 and 11, 2020 hearings questioned the expenses.  The BJH attorneys are entitled to recover the full amount of the requested expenses.

*4.    Interest*

In their motion, Bray, Jamison, and Hendershott request "attorney fees, nontaxable expenses, costs, pre- and post-judgment interest, and to enter a judgment . . . ." (ECF No. 110 at 4). Pre- and post-judgment interest are not appropriate under the present facts. First, TORO and ACSI agreed to a confession of judgment and to pay the BJH attorneys' provable attorneys' fees. The offer did not include pre- and post-judgment interest. Second, Bray, Jamison, and Hendershott established no basis for the recovery of pre- or post-judgment interest. Instead, they allege it as a blanket statement in the prayer of their motion. As movants, Bray, Jamison, and Hendershott have the burden to establish that they are entitled to any interest. They have not met their burden. The request for interest is denied.

## III.    LIABILITY FOR FEES

Having determined the fees to which the BJH attorneys are entitled, the Court must identify who is liable for payment. TORO and ACSI maintain that they are solely liable as the only two parties who made the confession of judgment and offer. (ECF Nos. 127 at 2; 130 at 4–5). The BJH attorneys argue that Trippon and Sternberg should be subject to fee liability because they were parties to the purchase agreement between ACSI and Anloc, they knowingly violated this Court's order in their direction of ACSI and TORO, and "[t]he Court has the jurisdiction to sanction any party, corporate or otherwise, who violates its orders." (ECF No. 129 at 2–4).

Trippon was individually a party to the purchase agreement between ACSI and Anloc dated June 30, 2017. (ECF No. 91-25 at 5). Sternberg signed the agreement on behalf of ACSI. (ECF No. 91-25 at 6). The recitals of that purchase agreement reference Anloc's bankruptcy and confirmed plan. (ECF No. 91-25 at 2). At a minimum, Trippon and Sternberg had constructive notice that an interpleader action would violate this Court's order.

Although Trippon and Sternberg may have intentionally violated the Court's order, if Bray, Jamison, and Hendershott want Trippon and Sternberg personally liable for payment of their fees, they should not have accepted TORO's offer that ACSI later joined. Neither Trippon nor Sternberg joined in the offer to pay attorneys' fees in their personal capacities. The Court will not impose personal liability on Trippon and Sternberg when Bray, Jamison, and Hendershott accepted the offer only from TORO and ACSI.

## CONCLUSION

A separate judgment will be entered.


SIGNED 11/18/2021


Marvin Isgur
United States Bankruptcy Judge